IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JERRY D. DUPREE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-03290-SRB |
| | ) | |
| WYNDHAM VACATION RESORTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Wyndham Vacation Resorts, Inc.'s ("Defendant") Motion to Dismiss (or Stay Proceedings) and Compel Arbitration. (Doc. #4.) For the reasons stated below, the motion is GRANTED.

### I. BACKGROUND

On September 28, 2020, Plaintiffs Jerry D. Dupree and Terry R. Dupree ("Plaintiffs") entered a contract with Defendant to purchase one of Defendant's timeshares in Branson, Missouri. Plaintiffs allege that Defendant used a "high-pressure sales presentation . . . designed to keep [Plaintiffs] from reading the contracts, reflecting or deliberating on the decision to purchase, discussing with each other their decision to purchase and omitting crucial facts about the timeshare." (Doc. #1-2, ¶ 4.) On November 25, 2020, while Plaintiffs were using their timeshare property, an intruder broke one of the windows and entered the premises. Responding to an emergency call, the Branson Police Department discovered that the timeshare's windows were not properly secured.

Plaintiffs subsequently sued Defendant in the Circuit Court of Taney County, Missouri. Plaintiffs seek to cancel the contract and recover damages for violation of the Missouri

Merchandising Practices Act based on Defendant's alleged misleading advertisement and sales tactics (Count I), failure to maintain property (Count II), breach of contract (Count III), and negligence (Count IV). On November 12, 2021, Defendant removed the case to this Court and filed the pending motion to dismiss, or stay, this case and compel arbitration.

Defendant argues that Plaintiffs' claims are subject to a binding arbitration provision contained in the timeshare contract. The operative provision of the timeshare contract reads:

> (a) Definition of Disputes: Any Disputes between the parties shall be resolved as follows: The Parties agree that any dispute, claim, suit demand or controversy arising out of or relating to this Agreement (any "Dispute") shall be determined exclusively and finally by individual arbitration, except as specified below. **"Dispute" includes, without limitation, any claim regarding any breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase, and/or use of Owner's Ownership, Owner's use of Seller's properties**, and/or Owner's participation in any activities/events sponsored, organized or made available by Seller or any of its affiliates.

(Doc. #5-1, p. 6)[1] (emphasis added). The arbitration provision states that the American Arbitration Association ("AAA") would administer the arbitration under its Consumer Arbitration Rules.

Defendant seeks to dismiss, or stay, this case and compel Plaintiff to arbitrate its claims in accordance with the timeshare contract's arbitration provision. Plaintiff opposes the motion, arguing the arbitration provision is invalid. The Court addresses the parties' arguments below.

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") "provides that '[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (quoting 9 U.S.C. § 2). "The Supreme Court has stated repeatedly that this provision

---

[1] All page numbers reference pagination automatically generated by CM/ECF.

2

establishes a 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* (quoting 9 U.S.C. § 4). "The FAA establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lyster v. Ryan's Family Steak Houses, Inc.,* 239 F.3d 943, 945 (8th Cir. 2001) (citations and internal quotation marks omitted).

"When presented with a motion to compel arbitration, we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *McFadden v. Van Chevrolet-Cadillac, LLC*, No. 18-00395-CV-W-BP, 2018 WL 3715756, at *1 (W.D. Mo. Aug. 3, 2018) (citation omitted). As a federal district court sitting in Missouri, this Court must analyze an arbitration agreement based on Missouri state-law principles.[2] *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016). "The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration." *Baier v. Darden Restaurants*, 420 S.W.3d 733, 737 (Mo. App. W.D. 2014) (citation and internal quotation marks omitted). "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." *Jackson v.*

---

[2] The Court finds, and the parties do not argue otherwise, that Missouri law applies.

3

Case 6:21-cv-03290-SRB   Document 16   Filed 01/20/22   Page 3 of 9

*Higher Educ. Loan Auth. of Missouri*, 497 S.W.3d 283, 287 (Mo. App. E.D. 2016) (citing *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 683 (Mo. App. E.D. 2015)).

**III. DISCUSSION**

Defendant argues, and Plaintiffs do not dispute, that the arbitration provision covers Plaintiffs' claims. However, Plaintiffs contest the validity of the arbitration provision, arguing it (1) lacks mutual assent; (2) lacks consideration; (3) and is unconscionable. Defendant disagrees.

**A. Mutual Assent**

Plaintiff argues the arbitration agreement lacks mutual assent. In Missouri, offer and acceptance require mutual agreement, which "is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time." *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 483 (Mo. App. E.D. 2010). "[A] proposal to enter into a bilateral agreement must be accepted by **both** parties for a contract to be formed." *Baier v. Darden Restaurants*, 420 S.W.3d 733, 738 (Mo. App. W.D. 2014) (emphasis in original).

In *Baier*, an employee signed several documents including an acknowledgement that she received and would abide by the employer's arbitration agreement. *Id.* at 735. The acknowledgement included a "Management Signature" line, but "[n]o one signed the [acknowledgement] on [the employer's] behalf." *Id.* Because the employer never signed the acknowledgement, the only evidence that the employer intended to be bound by the arbitration agreement was the employer's "self-serving claim that [the employer] meant for the [acknowledgement] to be an offer that would mutually bind both [the employee] and [the employer] if accepted in writing by [the employee]." *Id.* at 739. The *Baier* Court found mutual assent to arbitrate did not exist because it was "hard pressed to discern any purpose for placing a signature line for [the employer] on the [acknowledgement] unless it was to require an

4

authorized signature as a condition of mutual assent." *Id.* (holding the arbitration agreement invalid).

Plaintiffs contend that their case is on point with *Baier*. As evidence of a lack of mutual assent, Plaintiffs note that the arbitration provision contains two designated initial lines for Plaintiffs and two blank initial lines which Plaintiffs argue are for Defendant's agent to sign. "Plaintiffs allegedly initialed the [provision]. . . . No one signed the [provision] on behalf of Defendant as the second two lines . . . are blank[.]" (Doc. #10, p. 5.) Plaintiff contends that Defendant's lack of initials means Defendant failed to assent to the arbitration provision.

However, unlike the acknowledgement in *Baier*, the Court finds the purpose of the initial lines in the timeshare contract was not to memorialize the parties' mutual assent to arbitrate. Plaintiffs initialed under a declaration which states, "I have read and agree to the Dispute Resolution/Arbitration Clause" next to the line "Owners." (Doc. #5-1, p. 6.) The initial line only exists for Plaintiffs, not Defendant. Thus, dissimilar to *Baier*, which contained an unsigned employer-signature line, Defendant did not fail to sign or initial lines required as a condition of mutual assent. Furthermore, Defendant signed under the line designated for Defendant's "Authorized Agent" at the end of the contract. (Doc. #5-1, p. 9.) Defendant relies on more than a self-serving statement to prove mutual assent. In turn, the Court finds the arbitration agreement is supported by mutual assent.

### B. Consideration

Plaintiff argues that the arbitration provision lacks consideration because it contains a carve-out clause. The "Certain Carve-Out Clause" reads, in part:

> Despite this arbitration provision, the Parties reserve certain rights to proceed in court without waiving their right to arbitrate under this Dispute Resolution/Arbitration provision: (1) Seller reserves the right to seek emergency injunctive relief from a court to address any circumstances or behavior, by Owner

5

or any person who obtained or is using Owner's rights and privileges, that Seller believes may present a risk or threat to the safety, security or reputation of any resort, guests, reservation system, data system, or other feature or location connected with Seller; (2) Owner reserves the right to file a Dispute in small claims court in Florida, as long as the matter remains in small claims court and proceeds only on an individual basis; and (3) No provision of this Dispute Resolution/Arbitration provision shall limit the right of any Party to seek and use any available remedies, judicial or otherwise, for the purpose of foreclosing upon, or accelerating any debt secured by any property that is involved in any Dispute or subject to any Note, Promissory Notes, Mortgage Deed or Mortgage (the "Loan Documents") executed by the Parties.

(Doc. #5-1, p. 6.) Plaintiffs argue that this clause forces Plaintiffs to arbitrate all their claims while Defendant has excluded its most likely claims from arbitration. Plaintiffs contend that because only they are bound, the arbitration provision lacks consideration.

The Court rejects this argument. "[A]s long as the contract as a whole meets the consideration requirement, an arbitration clause in the contract will not be invalidated for a lack of mutuality of the obligation to arbitrate." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo. en banc 2015). Even assuming if the carve-out clause functionally eliminates Defendant's obligation to arbitrate, Plaintiff does not argue that the timeshare contract as a whole is not supported by adequate consideration. To be sure, the Court finds the consideration requirement is met. For example, the timeshare contract grants Plaintiffs a right to "use and occupy" Defendant's property "for a purchase price of $75,807.00[.]" (Doc. #5-1, p. 1.) Because the contract is supported by consideration, the carve-out clause does not render the arbitration provision invalid.

### C. Unconscionability

Plaintiffs argue the arbitration provision is unconscionable because Plaintiffs were subjected to high-pressure sales tactics and Defendant fraudulently induced Plaintiffs' purchase of the timeshare. Plaintiff also contends that the arbitration provision is procedurally

6

unconscionable because it contains a delegation clause, the carve-out clause, and a class-action waiver clause. The Court rejects Plaintiffs arguments.

"Unconscionability is defined as an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Eaton*, 461 S.W.3d at 432 (quotation marks and citations omitted). "Unconscionability doctrine guards against one-sided contracts, oppression, and unfair surprise." *Id.* "Oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstances invoke the objectively unreasonable terms." *Id.* arbitrator

Plaintiffs' arguments about Defendant's sales tactics and misrepresentations apply to the contract as a whole and are not specific to the arbitration clause.

> [A]n arbitration clause is severable from the remainder of a contract. . . . if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But where the claim was one of fraud in the inducement of the contract generally . . . that the issue was for the arbitrator.

*Koch v. Compucredit Corp.*, 543 F.3d 460, 464 (8th Cir. 2008) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). In other words, the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint*, 388 U.S. at 404. In turn, whether Defendant's sales tactics, misrepresentations, and other allegedly fraudulent behavior renders the contract unconscionable, without evidence of fraud specific to the arbitration clause, must be left for an arbitrator to decide.

Similarly, unless a party "challenge[s] the delegation provision specifically, we must treat it as valid under § 2 . . . leaving any challenge to validity of the Agreement as a whole for the arbitrator." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 72 (Mo. banc 2017). Here,

7

Plaintiffs state they "specifically challenge the delegation provision based upon the same arguments Plaintiff[s] are making on the unenforceability of the Arbitration Agreement." (Doc. #10, p. 12.)  The Court finds these arguments fail because, despite Plaintiffs' statement to the contrary, they are not specific to the delegation clause.

Plaintiffs also argue the delegation clause is unenforceable because the contract incorporates by reference the AAA Consumer Arbitration Rules.³  However, referencing AAA Rules "clearly and unmistakably evidences the parties' intent to delegate threshold issues of arbitrability to the arbitrator." *Id.* at 48.  Plaintiffs attempt to distinguish this case from *Pinkerton* because *Pinkerton* involved the AAA Commercial Arbitration Rules, not the Consumer Arbitration Rules.  However, Plaintiffs do not explain why that difference renders the timeshare contract's delegation clause, or the arbitration clause generally, unenforceable.  In turn, the existence of the delegation clause does not render the arbitration provision unconscionable.

Plaintiffs contend the carve-out clause is unconscionable for the same reason they argue it lacks consideration.  However, "lack of mutuality as to the arbitration agreement does not itself invalidate that arbitration agreement." *Eaton*, 461 S.W.3d at 434.  As previously discussed, the carve-out clause does not render the arbitration provision unconscionable because the contract is supported by adequate consideration.

Finally, the class-action waiver clause does itself invalidate the arbitration provision unconscionable. *See AT&T Mobility LLC v. Concepcion*, 653 U.S. 333, 344 (2011) (invalidating a law conditioning enforcement of arbitration on the availability of class procedure because that

---

³ Defendant waits until its reply brief to argue that "[b]y referencing the AAA's Consumer Rules in the Contract, however, the parties expressed a clear intent to arbitrate all disputes under the AAA Consumer Rules, including whether the arbitration agreement was validly formed." (Doc. #15, p. 5.)  Because the Court finds the arbitration provision valid and enforceable, the Court need not make this determination.

8

law "interfere[d] with fundamental attributes of arbitration."). Plaintiff does not explain why the class-action waiver in this case specifically is unconscionable, and the Eighth Circuit has upheld arbitration agreements with similar language. *See Cicle v. Chase Bank USA*, 583 F.3d 549, 555-56 (8th Cir. 2009) (holding the class-action waiver clause was not unconscionable because the provision allowed the plaintiff to "file her claim individually in small claims court," and the clause makes "no attempt to limit the amount or types of damages that an arbitrator may award" under the Missouri Merchandising Practices Act) (applying Missouri law).

The Court thus finds the arbitration provision valid. In turn, Defendant's motion is granted to the extent Defendant seeks to compel arbitration. However, the Court finds that because the entire dispute may not be resolved in arbitration, a stay is more appropriate than a dismissal of this case.

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendant's Motion to Dismiss (or Stay Proceedings) and Compel Arbitration (Doc. #4) is GRANTED and this case is hereby STAYED pending resolution of the arbitration.

It is FURTHER ORDERED that within two weeks of completion of the arbitration proceedings, the parties shall advise this Court if further proceedings are necessary or if the matter can then be dismissed.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
JUDGE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT

DATED: January 20, 2022